DEWEY et al. v. BOWMAN et al.

In equity cases, although no motion for a new trial is made, this Court will not hold the findings of fact by the Court below conclusive.

Where a promissory note is payable three months after date, with interest at the rate of —— per month, the interest runs from the date of the note.

Where a lease is assigned as security for a note, it is a pledge, and not a mortgage. The "*pledgee*" does not take the legal title by the assignment, or by failure of the "*pledgor*" to pay the note; but he has the right to collect the rents, and apply them on the note, and is responsible for the surplus.

A pledgee has no right to sell until after demand and notice; and if he sells without demand and notice, to a party having full knowledge of his title, no absolute title passes, and the property remains in the hands of the purchaser, as a pledge.

APPEAL from the Superior Court of the City of San Francisco.

This was a suit in equity to enforce the performance of a trust, created in the following manner : One Schoyer was the owner of a claim of eight thousand four hundred dollars, for rent of the marine hospital in San Francisco, to become due from the State of California. He assigns five thousand four hundred dollars thereof to one Moses ; Moses assigns his claim to plaintiffs. Subsequent to the assignment to Moses, Schoyer, in order to secure the payment to defendant, Bowman, of his note for one thousand five hundred dollars, dated August 25, 1854, payable three months after date, with interest at the rate of four per cent. per month, assigns to him the whole of the rent. Bowman makes out a claim for the whole rent, eight thousand four hundred dollars, and presents it to the State authorities for allowance, and states that his lien thereon consisted of the note and interest. Before this claim is audited, he sells Schoyer's note, and transfers the whole of the State claim to defendant, Cohen, for the face of his note, telling Cohen of the circumstances under which he took the security. Cohen gets from the State eight thousand four hundred dollars in Comptroller's warrants, which are found by the Court to be worth sixty-five cents on the dollar. No notice was given Schoyer by Bowman of his intention to sell the security. A decree was rendered on the thirty-first of December, 1856, against Cohen, for the value of the warrants, after deducting one thousand nine hundred and thirty dollars for the Bowman note, and ninety-five dollars for the services of Cohen, in procuring the warrants. No motion was made for a new trial, but the defendant took this appeal directly from the final decree of the thirty-first of December, 1856.

*Thomas* for Appellants.

The judgment of the Court below, against Jacob S. Cohen, should be reversed, for the following reasons:

Because the finding of the Court was, so far as Cohen was concerned, contrary to the evidence in the case.

This cause was submitted to the Court, sitting as a jury, upon complaint, answers, and exhibits. The allegations in the complaint, as to the value of the claim against the State of California, and the charge of fraud and collusion between Bowman and Cohen, in the sale of the said claim against the State, by the said Bowman to Cohen, were controverted and denied by the answers of Bowman and Cohen, and the Court was bound to find, as to those allegations, for the defendants who answered.

If Cohen is liable for the value of the claim against the State, as found by the Court, over and above the amount of the note, given by Schoyer to Bowman, and the interest thereon, according to its tenor, then the finding of the Court is without evidence to support it, as to the amount of the principal and interest of the note, at the time of the supposed conversion of the claim against the State, by Cohen, which was on the twenty-eighth of November, 1855.

The note was for fifteen hundred dollars, bearing interest at the rate of four per cent. per month, and dated August 24, 1854. There was interest due upon the note, when it was paid by the conversion of the State warrants, on the twenty-eighth November, 1855, amounting to nine hundred dollars. Add the interest to the principal, and the result will be twenty-four hundred dollars, the amount actually due upon the note, when it was considered, by the Court below, paid and discharged.

The finding of the Court is, that there was due upon the note, when it was paid, something more than nineteen hundred dollars.

The transaction between Schoyer and Bowman, as to the assignment of the lease by Schoyer to Bowman, to secure the payment of the note for fifteen hundred dollars, with interest, was a mortgage, and upon the failure of Schoyer to pay the note at maturity, the title to the lease became absolute in Bowman. 2 Johns. Ch., 100; 5 Johns., 258; 8 ib., 96; 10 ib., 471; 12 ib., 146; 2 Pick., 610; 9 Wend., 80; 12 ib., 61; 7 Cowen, 290; 7 How. Pr. R., 251.

The title to the lease, upon forfeiture, becoming absolute in Bowman, he could retain the property mortgaged, in satisfaction of his debt, or foreclose by the sale of the property, after a reasonable notice to the mortgagor to redeem, without making application to a Court for that purpose. 1 P. Williams, 261; 1 Brown P. C., 494; 2 Atk., 303; 2 Kent, 747, top page; 2 John. Ch., 100; Powell on Mort., 1041; 1 Ves. Sen., 278; 2 Fonblanque, 261; N. Y. 2 Pick., 610.

There is no authority, which I can find, in support of the position that the sale of personal property, under a mortgage, by the mortgagee, must be at auction; but, to the contrary, all the authorities cited go to establish the reverse of that proposition.

It is, in the case of sales of personal property under mortgage, the same as it is in others: that the purchaser takes a good title, notwithstanding the person authorized to make the sale fails to give the notices required by law. 2 Bibb, 401, 202; 1 Hill S. C., 239; 8 Mass., 326; 17 ib., 240; 1 Blackf., 210; 1 Miss., 749; 3 J. J. Marshall, 505; 11 Ala., 459.

Upon the forfeiture of the mortgaged property, and the title in the mortgagee becoming absolute, there is no title remaining in the mortgagor, which can even be subjected to sale under execution against him. But the reverse of this is true, as to the mortgagee. All the title is vested in him, which may be levied upon and sold, and the purchaser vested with a good title. 5 Ala., 740, 770; 8 Miss., 332; 9 Wend., 258.

*Shafter, Park & Shafter,* for Respondents.

The complaint was sworn to, and stated the value of the warrants at sixty-five per cent. upon their nominal amount. There is no specific denial in Cohen's answer of this allegation. Cohen, after specifically denying a portion of the complaint, admitting all the material facts, then proceeds, by way of further answer, to " deny, generally and specifically, each and every allegation of the complaint."

This is an inconsistent answer, and must be false upon its face, and is not permitted under the Practice Act. The general denial, in short, is a nullity.

But if such general denial puts in issue the value of the Comptroller's warrants, the defendant is entirely concluded by the finding, for upon the " proofs" the Court finds the value to be sixty-five per cent., as alleged, and moreover finds that so much money went into the hands of Cohen, as so much had and received to plaintiff's use.

As to the value of the note from Schoyer to Bowman, this Court have only the statement of counsel in the brief, to oppose to the finding of the Court below.

The appellant assumes that the assignment to Bowman, from Schoyer, was a mortgage.

By the terms of the assignment D it was as " security." We think the assignment was as a pledge, and that the case cited, 2 Johns. Ch., 100, and Lansing *v.* Cartelyou, 2 Caines' Cases in Error, demonstrate it.

But whether this is a case of pledge or of mortgage, it is more security; if a pledge, then neither Cohen nor Bowman could sell without notice. 2 Johns. Chan., 100; 2 Story's Equity, § 1030, 1036; and no notice in this action is found.

If this is a mortgage, then, at law, the mortgagee stood exactly where a mortgagee of realty formerly stood. He has the legal title, and could convey it, but every one who takes it with notice, takes it subject to the mortgagor's equity. He can satisfy the debt out of it, and must account for the residue.

The cases cited by appellant, 1 P. Williams, 261; 2 Atk., 303; 2 Johns. Ch., 100; 1 Vesey Sen., 274; these cases all show that a bill to redeem will be sustained under proper circumstances, and some of them show that the sale made was for less than the debt

In 2 Story's Eq., §§ 1030–1036, this subject is discussed, and chattel mortgages are, to all intents, there regarded as mere securities, the legal title being only in the mortgagee, for the purpose of paying off his debt. The contract stated in note 4, pages 374–5: "If I, the borrower, repay the money, you must re-deliver the goods, but if I fail to repay it, you must use the security I have left to repay yourself."

This "to repay himself," is the extent of the creditor's right.

BURNETT, J., delivered the opinion of the Court—TERRY, J., concurring.

This case was decided at the last April Term of this Court, and the judgment of the Court below affirmed, upon the ground that no motion was made for a new trial. Upon a petition for a rehearing, we are satisfied that our former decision was erroneous. The case was an equitable proceeding, and no motion for a new trial is necessary in such cases. We were led into this error by a mistake in the brief of the defendant Cohen, in which the action is styled, "an action of trover and conversion."

This case was heard in the Court below upon complaint, answer, and exhibits, and not upon "allegations, proofs, and arguments," as the plaintiffs' counsel has it. The finding uses the terms "allegations, exhibits, and arguments," and not the word "proofs," as stated in plaintiffs' additional brief.

This being a proceeding in equity, and having been tried upon the complaint, answers, and exhibits, the usual presumption in favor of the correctness of the finding cannot apply.

The only substantial error in the finding of the Chancellor, is in reference to the value of the note of Schoyer to Bowman. In the complaint, it is alleged, that "Schoyer being indebted to said defendant Bowman, upon a note, dated August 25, 1854, for the sum of fifteen hundred dollars, payable three months after date, with interest at four per cent. per month, for the purpose of securing the payment of said note, executed to said Bowman a writing, a copy of which is hereto annexed, marked D." This instrument was an assignment of the lease to Bowman for the purpose stated in the complaint. The statement of the note, as

contained in the complaint, is the same as the description found in the assignment to Bowman.

The first question to be determined, regards the period at which the interest began to run. Was it from the date of the note, or at the time the note became due? The parties had the right to stipulate what the rate of interest should be, and when it should begin to run. They have expressly stipulated as to the rate of interest, but not as to the time of its commencement. We must, therefore, infer the intention of the parties as to the time the interest should commence, from the note as we find it. From the face of the note, the conclusion is clear, that the consideration for which it was given, passed from the payee to the maker at the date of the note. We must presume that this consideration was of the value of fifteen hundred dollars; this sum the maker promises to pay, with interest, at a specified time. The promise is to pay the amount of the note, with interest on the same, at a future day. The interest, therefore, in the contemplation of the parties, must accrue *before* the note falls due, and must run from the date of the note.

If these views be correct, the note of fifteen hundred dollars would draw interest from the date until the twenty-eighth day of November, 1855, the time when Cohen received the State warrants. The principal, with the interest included, would exceed the sum of nineteen hundred and thirty dollars, the amount as found by the Court below.

The fact that Cohen knew the terms of the assignment from Schoyer to Bowman, cannot, we think, be doubted. The assignment of the claim for rent made by Bowman to Cohen was upon a copy of the written application of Bowman to the State officers, in which written application it was expressly stated that the assignment to Bowman was made to secure the payment of the note, and that he claimed no more. Besides, this knowledge on the part of Cohen is expressly charged in the complaint, and not denied in the answer. It is true, Cohen states in the close of his answer, after admitting many facts alleged in the complaint, that he "denies, generally and specially, each and every allegation as set forth in the complaint." But this general and sweeping denial—though the answer is sworn to—is insufficient. The complaint being verified, the answer must contain "a specific denial to each allegation of the complaint, controverted by the defendant, or a denial thereof according to his information and belief;" and "every material allegation of the complaint, not specially controverted by the answer, shall, for the purposes of the action, be taken as true." (Practice Act, §§ 46 and 65.)

The object of this provision of the statute was to avoid the necessity and expense of producing proof to sustain the allegations of the complaint, in cases where the plaintiff would swear

11

they were true, and the defendant would not deny the truth of the alleged facts under oath. This end could not be effectually accomplished, if defendants were permitted to deny the allegations of the complaint in general terms. The answer should contain a separate and specific denial of each separate allegation of material fact in the complaint, which is intended to be controverted by the answer. In this way, the attention of the defendant is distinctly and separately called to each allegation of fact, and if he commits perjury in his answer, it can be at once seen in reference to what fact it is committed; and without any reference to this, or any other particular cases, we must be permitted to remark, that it is truly painful to witness the reckless ease with which defendants, in too many cases, make these " general and specific " denials, under oath, of " each and every allegation of the complaint," when it is clear that some of the material allegations of the complaint would never have been separately denied. This is shown, in such cases, by the conclusive proof afterwards produced on the trial.

The principal error assigned by the defendant, Cohen, has reference to a question of law, arising in the Court below upon the facts as found. It is insisted by the learned counsel that " the assignment of the lease by Schoyer to Bowman, to secure the payment of the note for fifteen hundred dollars, with interest, was a mortgage, and upon the failure of Schoyer to pay the note at maturity, the title to the lease became absolute in Bowman."

In reference to mortgages and pledges of personal property in general, it was held by this Court in the case of Hyatt v. Argenti, 3 Cal. Rep., 151, that they might be made upon such terms and conditions as the parties may agree upon, and Courts of Law will be governed by the language of the contract in each particular case.

A mortgage of personal property passes the present legal title in the property itself to the mortgagee, subject to be re-vested in the mortgagor, his heirs, or assigns, upon the performance by him or them of an *express condition subsequent.* Such is the effect of a mortgage of personal property *at law.* But in equity, under proper circumstances, the mortgagor may redeem, even after non-performance of the condition. One of the clearest cases of a mortgage of personal property, as distinguished from a pledge, is found in the eighth volume of Johnson's Reports, p. 96. A sold B three horses for two hundred and ten dollars, and gave him a regular bill of sale, but at the same time B gave to A a writing engaging that on the payment of the two hundred and ten dollars, in fourteen days, to return the horses to A. The money was not paid at the time agreed upon, and the title to the property became absolute in B, and a subsequent tender of the money by A, and demand of the property, did not entitle him to maintain trover for it.

Dewey v. Bowman.

In the case of a *mortgage* of personal property, the title being in the mortgagee, the risk of loss is also with him. In the case mentioned, had the horses died, or had they been stolen within the fourteen days, the loss would have fallen on B. And as A did not pay the money within the time limited, the property became absolute in B, and A was not liable to B for the two hundred and ten dollars. In cases of mortgages of personal property, if the mortgagee relies upon his legal rights, and insists that the property becomes his absolutely, the mortgagor will be discharged from all further liability upon the mortgage-debt, unless there is something special in the case.

But it is different in the case of a pledge. The pledgee has a lien upon, not the legal title to, the property. It is taken as *security*, and the legal title remains in the pledgor, 3 Cal. Rep., 162. If any loss occur, it falls upon him. If the debt, to secure the payment of which the pledge is made, be not discharged when due, the pledgee does not obtain an absolute title to the property. He then has a right to sell the pledged property, and pay himself from the proceeds. If they are not sufficient to discharge the debt entire, the pledgor remains liable for the deficiency, and if they are more than sufficient, the pledgee is responsible for the surplus. Story's Eq. Jur., § 1030 to 1035a.

The question then arises, was the assignment by Schoyer to Bowman a mortgage or a pledge? And this question may be answered by considering : First, whether the title in the lease at once passed to Bowman ; or, Second, whether it was merely intended as a collateral security for the note of fifteen hundred dollars. If it was intended as a mortgage, then all the risk of loss, and chance of gain, were thrown upon Bowman. If no rent had ever been collected upon the lease, Schoyer would not then have been liable to Bowman upon his note.

But it would seem clear that this could never have been the intention of the parties. The assignment itself says it was "made for the purpose of securing said Bowman the payment" of the note. And Bowman, in his written application to the State officers, only claimed so much as would be required to pay the note and interest. And, in addition to these facts, Bowman took a promissory note, *drawing interest ;* and, had no rents been realized, Schoyer would still have been liable upon the note. That the assignment of the lease was but collateral, would seem clear, and could not, therefore, have been a mortgage, but only a pledge. After the note became due, Bowman could have sued Schoyer upon it, at any time, without regard to the lease. Upon the failure of Schoyer to pay the note, the title of Bowman in the lease did not become absolute, and the liability of Schoyer upon the note continued. And, as his liability upon the note continued, his right to the surplus of the pledged property, after

paying the note and interest, also continued.   And this right he could, and did, assign to two of the plaintiffs.

The case of Gallick v. James, (12 John. R., 145,) cited by the counsel for defendant Cohen, is a case in point, and sustains the view we have taken.   In that case, the note of a third person was deposited by a debtor with his creditor, as collateral security for a debt, and it was held that this was a pledge, and that the ownership remained in the pawnor; and that the authority of the creditor, "with respect to the note, could extend no further than to receiving the money due upon it, without first calling upon the debtor, in some way, to redeem.   The money, when received, would be a substitute for the note, and to be held upon the same terms, and subject to the same rights and duties as the note."

In the case under consideration, the authority of Bowman only extended to the receiving the rents, and he had no right to sell the lease until after demand and notice.   Story's Equity Jurisp., § 1033, and note; 3 Cal. R., 162.   No demand and notice were shown in this case.   The assignment by Bowman to Cohen, who took with full knowledge, passed no absolute title in the property pledged.   The proceeds of the lease in the hands of Cohen, remained as a pledge, and he was liable to the assignees of Schoyer, in the same way as Bowman would have been, had he collected the rents due upon the assigned lease.   Cohen had a right to retain an amount sufficient to pay the note and interest, and was liable for the surplus.

For these reasons, the judgment of the Court below must be reversed.   And that Court will so modify its judgment as to allow defendant Cohen the amount of the note and interest, and enter a decree in favor of plaintiffs, against him, for the remainder.   The defendant Cohen will be entitled to the costs of this appeal.