JAMES HEWINS & others, assignees, *vs.* CHARLOTTE E. BAKER.

Suffolk.    January 24, 1894. — May 17, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Collateral Security — Assignment of Policies of Insurance — Assent of Company — Waiver.*

The delivery of an insurance policy for a valuable consideration, with the intent to vest the title in the assignee, operates as a valid transfer, and the equitable interest thus acquired by the assignee will be protected and enforced in courts of law.

A failure to obtain the consent of an insurance company to an assignment of a policy, as required by its terms, may defeat the policy, but does not render invalid the transfer; and it seems that an issuance of a paid up policy by the company in place of the original policy after an assignment of the latter without its consent, is a waiver of that requirement.

On the question whether M., the maker of certain promissory notes, delivered to B., the holder of them, certain policies of insurance as collateral security for his notes, B. testified that " he [M.] said he would assign them to me ; . . . he put them all in my box ; . . . he said they were collateral security for all those notes ; he said he assigned these policies to me for security for those notes ; he told me they were all mine ; he said they were mine just as much as if I had the money ; . . . he told me that the writing was to show that those policies belonged to me, and when his estate was settled, or if I should die suddenly, it would be all right, because I saw him put them in the box ; . . . he said those policies of insurance were mine ; that he had assigned them to me and that he gave them to me." B. further testified that he saw M. put the policies in his box, which, though kept in M.'s safe, had a tag on it bearing the words " Property of B., Boston, Mass." ; and that subsequently the box with its contents and the key which had been kept by M. were left with B. for examination, and thenceforth remained in his possession. *Held,* that upon this evidence a finding was warranted that the policies were delivered to B. by M. as collateral security for his notes.

BILL IN EQUITY, filed August 10, 1893, by the assignees in insolvency of the estate of Moody Merrill, to obtain possession

of certain policies of insurance, and for the surrender and cancellation of a certain written instrument purporting to transfer to the defendant the policies of insurance, with a view, as alleged, to give a preference in fraud of the insolvent law.

Hearing in the Superior Court, before *Hammond*, J., who reserved the case for the determination of this court, on facts in substance as follows.

The defendant had for many years intrusted the insolvent, Moody Merrill, with the care of a large amount of her property, and had given to him large sums of money for investment for her in stocks and other securities, which were placed in a box kept in Merrill's safe at his office, but bearing a tag containing, in the defendant's handwriting, the words, " Property of Charlotte E. Baker, Boston, Mass." Merrill collected her interest, and settled with her semiannually, and, a large balance remaining unpaid, he gave her his notes, to which, in July, 1892, she asked for some collateral security. Thereupon, as the defendant testified, he said that he would give to her as security for the notes certain policies of insurance; " he [Merrill] said he would assign them to me; . . . he put them all in my box; . . . he said they were collateral security for all those notes; he said he assigned these policies to me for security for those notes; he told me they were all mine; he said they were mine just as much as if I had the money; . . . he told me that the writing was to show that these policies belonged to me, and when his estate was settled, or if I should die suddenly, it would be all right, because I saw him put them in the box; . . . he said those policies of insurance were mine ; that he had assigned them to me, and that he gave them to me."

The defendant further testified, that in December, 1892, not doubting that everything was all right in Merrill's dealings, she asked him for her box, and in January, 1893, he left it with her for examination; that the policies were in it, wrapped around with a paper, on the back of which was written, in the handwriting of Merrill, " Assignment of policies "; and on the inside in his handwriting, " Life insurance policies on the life of Moody Merrill, July 25, 1892." Inside the wrapper was the following written direction: " Boston, July 25, 1892. In consideration of one dollar to me paid by Charlotte E. Baker, of

Boston, widow, I hereby direct James Hewins and Winthrop Minot Merrill, or whoever may settle my estate, in case of my decease, to appropriate the proceeds of Policy No. 121,715, No. 121,716, and No. 121,991 in the Connecticut Mutual Life Insurance Company, and No. 20,550, No. 21,898, and No. 22,947 in Home Life Insurance Company, and No. 166,241 in the Mutual Life Insurance Company of New York, to the payment of any notes or demands said Charlotte may hold against me at the time of my decease, and to pay any balance remaining due after such appropriation from other property belonging to my estate, without waiting to administer upon the same, upon said Charlotte releasing all claim to any stock, bonds, notes, or mortgages held by her or laid aside as collateral security for said notes and demands against me. Witness my hand and seal this twentieth day of July, A. D. 1892. Moody Merrill. [Seal.] "

This writing was enclosed in an envelope addressed in Merrill's handwriting, " To James Hewins, Winthrop M. Merrill, or whoever may administer my estate, Boston, July 25, 1892." This address the defendant testified she read when the writing, envelope, and policies were put in her box, July 25, 1892. After the box had been left with the defendant she kept it in her possession, with its contents, including the policies of insurance, which, before the filing of the bill, the plaintiffs demanded of her.

Of these policies three were issued by the Connecticut Mutual Life Insurance Company, and were for $5,000 each ; two of them were fully paid up, while on the third the last premium was not payable until February 28, 1902. They were all payable to the legal representatives of Moody Merrill. Each of them contained this provision : " This policy is issued and accepted upon the following express conditions and agreements. . . . No assignment of this policy shall be valid unless made in writing indorsed hereon ; and that any claims against this company arising under this policy made by any assignee shall be subject to proof of interest."

Three other policies, for $2,000, $3,000, and $5,000, respectively, fully paid up, and payable to Moody Merrill, his executors, administrators, and assigns, were issued by the Home Life Insurance Company. Each of them provided that " it is further understood and agreed by and between the parties hereto . . .

that this policy shall not be assigned without the consent of the company in writing previously obtained."

The remaining policy, issued by the Mutual Life Insurance Company of New York, was for $10,000, payable to Merrill, " his executors, administrators, or assigns," and contained a condition that " the provisions and requirements printed by the company upon the back of this policy are hereby referred to and accepted as part of this contract, as fully as if they were recited at length over the signatures hereto affixed." On the back of the policy was the following provision : " Assignments. This company will not take notice of any assignment of this policy until a duplicate or a certified copy thereof shall be delivered to the company at its principal office ; and under no circumstances will the company assume any responsibility for the validity of such assignment; if any claim be made under an assignment, proof of interest to the extent of the claim will be required." Merrill defaulted on the annual premium payable on April 25, 1893, and in September, 1893, the defendant returned that policy to the company, and on application received in its place a paid up policy for $4,826. This policy contained the provision, " In consideration of the application for a former policy, No..166,241, and of the surrender of the former policy," the company promised " to pay to Moody Merrill, his executors, administrators, or assigns, $4,826, without profits, upon acceptance of satisfactory proofs at its home office of the death of said Moody Merrill during the continuance of this policy, subject to the provisions stated on the back of this policy, which are hereby referred to and made part hereof, and subject to all claims and equities attaching to the ownership of said former policy." On the back of said policy was the following provision : " The company declines to notice any assignment of this policy until the original assignment, or a duplicate or certified copy thereof, shall be filed in the company's home office. The company will not assume any responsibility for the validity of an assignment."

The judge found that these policies, and the paper dated July 25, 1892, set forth in the plaintiffs' bill, were on that day delivered as collateral security to the defendant for the notes of Merrill, and at the time of their delivery the defendant believed, and from what was said to her by Merrill was justified in be-

lieving that the policies were assigned to her as collateral security for whatever was then due or might thereafter become due from him to her ; that she read the paper dated July 25, 1892, and understood the language, and that if it has any effect inconsistent with the assignment she did not understand that effect.

*D. E. Ware,* for the plaintiffs.

*F. S. Hesseltine,* (*N. F. Hesseltine* with him,) for the defendant.

MORTON, J.   It is not necessary to decide whether the writing signed by Merrill did or did not constitute a valid assignment of the policies to the defendant.   Independently of that, there was evidence that Merrill transferred them to her, and that she received them as collateral security for the notes which she held against him.   The defendant testified, among other things, that " he [Merrill] said he would assign them to me ; . . . he put them all in my box ; . . . he said they were collateral security for all those notes ; he said he assigned these policies to me for security for those notes ; he told me they were all mine ; he said they were mine just as much as if I had the money ; . . . he told me that the writing was to show that those policies belonged to me, and when his estate was settled, or if I should die suddenly, it would be all right, because I saw him put them in the box ; . . . he said those policies of insurance were mine ; that he had assigned them to me, and that he gave them to me."   There was also evidence that the box, though kept in Merrill's safe, had a tag on it, with the words, " Property of Charlotte E. Baker, Boston, Mass ," and that some months after this transaction the box with its contents, and the key, which Merrill had had, were left by him with the defendant for examination, and thenceforward remained in her possession.   Upon this evidence, the court was justified in finding that the policies were delivered to the defendant by Merrill as collateral security for his notes.

It is well settled that the delivery of such a chose in action as an insurance policy for a valuable consideration, with the intent to vest the title in the assignee, operates as a valid transfer, and that the equitable interest thus acquired by the assignee will be protected and enforced in courts of law.   *Crain* v. *Paine,* 4 Cush. 483.   *Palmer* v. *Merrill,* 6 Cush. 286.   *Currier* v.

*Howard,* 14 Gray, 511. *Norton* v. *Piscataqua Ins. Co.* 111 Mass. 532. There is nothing in the writing inconsistent with the parol assignment. It does not purport on its face to be so much an assignment of the policies to the defendant, as a direction regarding the disposition of the proceeds to those who should administer on his estate, and who would hold the legal title to the policies ; and it recognizes, by implication at least, that the defendant is entitled to and has an interest in the proceeds of the policies. The indorsement on the wrapper of the words "Assignment of policies" is not conclusive as to the effect of the writing.

In three of the policies there was a provision that the assignment should be in writing, and in three others a provision that the policies should not be assigned without the written consent of the company. In the policy of the Mutual Life Insurance Company of New York, it was provided that the company would not take notice of any assignment until a duplicate or certified copy thereof should be delivered to the company at its principal office. The plaintiffs contend that there were no assignments of the policies, because these various provisions were not complied with. But it is expressly said in *Merrill* v. *New England Ins. Co.* 103 Mass. 245, 252, of a provision that the policy should be null and void if assigned without the written consent of the company, that it "does not prevent the transfer or pledge of the policy. It reserves to the company the right to give or to refuse its consent to such transfer ; and, if made without its consent, to avoid its contract altogether. The effect of the condition is, to defeat the policy ; not to defeat the transfer." The same reasoning applies to provisions requiring that assignments should be in writing, or requiring duplicate or certified copies to be delivered to the company at any particular place. Besides, in the case of the Mutual Life Insurance Company of New York, the company, by issuing a paid up policy, would seem to have waived the provision relied on, and it is difficult to see how the plaintiff can set it up.

The result is, that the bill must be dismissed, with costs, and it is

*So ordered.*