JOSEPH P. MANTON, Trustee, *vs.* LOUIS E. ROBINSON, Administrator.

A. held a twenty year endowment life insurance policy for $10,000, maturing January 1, 1886, the premiums on which were payable quarterly and in full during the first ten years of the policy. March 6, 1873, A. assigned the policy to B. as collateral security for B.'s endorsements of A.'s note for $3,000 and the renewals thereof, and on August 6, 1876, assigned the policy, subject to the prior assignment to B., to C. as collateral security for A.'s note for $3,212.07 payable to the order of C. on demand. A. paid all the premiums on the policy excepting the last three which were paid by B., who, upon A.'s failure to pay the first of these three premiums, took up the outstanding renewal note at its maturity. In 1881 B.'s guardian and C. surrendered the policy to the company which issued it for its cash value, $8,079.50, which sum was paid to the guardian on his and C.'s joint receipt, and out of which the guardian paid to C. $3,771.43. Neither of the assignments authorized a surrender or sale of the policy, and no notice of an intention to surrender it was given to A., who was not apprised of its surrender until informed of the fact by the company about six months later. No demand by C. for the payment of the note held by him had been made on A. prior to the surrender of the policy. On a bill filed by A. against C.'s administrator for an account,

*Held,* that the surrender of the policy to the company for its cash value was equivalent to a sale of it to the company.

*Held,* further, that the surrender of the policy was unauthorized for want of notice to A. of an intention to surrender it, and further, so far as C. was concerned, because A. was not in default, no demand having been made on him for the payment of the note held by C.

*Held,* further, that it was no objection to the maintenance of A.'s bill that C., in signing the receipt upon the surrender of the policy, did nothing more than he might have been compelled to do by B.'s guardian, since in any suit by B.'s guardian to enforce his claim against the policy, the court would have protected A.'s rights.

*Query,* whether on a bill brought by B.'s guardian to enforce his claim against the policy the court would, in the circumstances of the case, have decreed a surrender of the policy.

*Held,* further, that A. was entitled to an account from C.'s administrator.

BILL IN EQUITY for an account. Heard on pleadings and proofs.

*March* 18, 1896. MATTESON, C. J. This is a bill for an account. The case shows the following facts : The complainant was the holder of a policy of insurance for ten thousand dollars, issued on his life by the Mutual Life Insurance Company of New York. The policy was a twenty year endowment, maturing January 1, 1886, the premiums on which were payable quarterly and in full during the first ten years of the policy. The last premium was due on October 1, 1876. On March 6, 1873, the complainant assigned the policy to John T. Mauran, formerly of Providence, deceased, as collateral security for his endorsement of Manton's note for three thousand dollars, payable in four months. On August 20, 1875, Mauran, having received other securities from Manton for other indebtedness, gave to Manton a receipt reciting that he held this policy as security for his endorsement of Manton's notes for three thousand dollars. On August 6, 1876, the complainant assigned the policy, subject to the prior assignment to Mauran, to Martin C. Stokes, defendant's intestate, as collateral security for a note for $3,212.07 made by Manton, payable to the order of Stokes on demand. Neither of these assignments contained any provision authorizing a surrender or sale of the policy. The policy was delivered by Manton to Mauran at the time of its assignment to him on March 6, 1873, and remained in his possession until it passed into the hands of his guardian. Manton continued to pay the premiums on the policy until April 1, 1876, and the three remaining premiums were paid by Mauran, though the complainant claims that one at least of these was subsequently repaid by him to Mauran. The note for the endorsement of which the assignment to Mauran was given was made prior to the assignment to Mauran, and by an agreement between Manton and Mauran was to be renewed until January 1, 1878. But the last renewal was made February 22, 1876, and the note given on that renewal became due June 25, 1876, after Manton had ceased to pay the premiums on the policy, and was taken up by Mauran.

On July 9, 1878, Henry C. Cranston was appointed guardian of Mauran, and the policy and the overdue note came into his hands as guardian. Cranston, as guardian, in 1881, proposed to the company to surrender the policy for its cash value, but was met by the objection that notice of the assignment to Stokes had been given to the company, and the assignment to him entered on the books of the company, before the assignment to Mauran, and consequently the company could not pay the value of the policy to him unless Stokes should release his claim or join in the receipt. Cranston applied to Stokes to sign the receipt, which Stokes did. The full surrender value of the policy, $8,079.50, was thereupon, to wit, on May 18, 1881, paid to Cranston as guardian, who, after deducting from it the premiums paid by Mauran, amounting with interest to $772.35, paid to Stokes $3,771.43 of the residue on account of the note held by him, and retained for himself, as guardian, on account of the note taken up by Mauran, $3,535.72. No demand by Stokes for the payment of the note held by him had been made on Manton prior to the surrender of the policy. Nor was any notice given to Manton, either by Cranston as guardian or by Stokes, of an intention to surrender the policy, and Manton was not apprised of the surrender until about six months later, when he heard of it from the company.

The surrender of the policy to the company for its cash value was equivalent to a sale of it to the company. Without raising any objection to it on any other ground, we are of the opinion that the action was unauthorized, because no notice of an intention to surrender was given to Manton by either Cranston or Stokes, so that he might have a reasonable opportunity to redeem the policy. And, further, so far as Stokes was concerned, Manton was in no default, no demand on him for the payment of Stokes' note having been made. *Dewey* v. *Bowman*, 8 Cal. 145 ; *Robinson* v. *Hurley*, 11 Iowa, 410.

This suit is against the administrator on the estate of Stokes alone, and the point is taken that the bill ought not

to be maintained because Stokes, in signing the receipt, did nothing more than he might have been compelled to do by Cranston as guardian, since the assignment to Stokes was subject to the prior assignment to Mauran. We do not think the point is tenable. It is by no means clear that the court would have felt warranted in decreeing a surrender of the policy, for at the time of the surrender all the premiums had been paid, so that it was in fact a paid up policy having less than five years to run. Neither of the assignments authorized a surrender or sale of the policy, and it was adequate security for the premiums which Mauran had paid and for the indebtedness for which it was pledged. *Whitteker* v. *The Charleston Gas Co.*, 16 W. Va. 717. But however this might be, Manton would have been a necessary party to any suit undertaken by Cranston as guardian to enforce his claim against the policy, and the court, whatever its decree, would have protected the rights of Manton.

We are of the opinion that the complainant is entitled to an account.

*Edmund S. Hopkins*, for complainant.

*Richard B. Comstock & Rathbone Gardner*, for respondent.