MUTUAL BEN. LIFE INS. CO. v. SWETT et al.

(Circuit Court of Appeals, Sixth Circuit. April 12, 1915.)

No. 2497.

1. INSURANCE ⟨key⟩586—BENEFICIARIES—VESTED RIGHTS.

Under an ordinary policy of life insurance, in which there is no reservation of the right to cut off or modify the interest of the beneficiary, the policy and the money to become due thereunder belong, from the time it is issued, to the person named in it as the beneficiary, and insured is without power by deed, assignment, will, surrender of the policy for a new one, or by any other act of his, to transfer to any other person the interest of the person so named as beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1470; Dec. Dig. ⟨key⟩586.]

2. INSURANCE ⟨key⟩586—BENEFICIARIES—VESTED RIGHTS.

Under a life insurance policy reserving to insured the right, without the consent of the beneficiary, to change the beneficiary, the beneficiary had no vested right, but only a mere expectancy during the lifetime of insured, and insured's control over the policy was, subject to its terms, as complete as if he himself had been the beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1470; Dec. Dig. ⟨key⟩586.]

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. INSURANCE ☞210—ASSIGNMENT BY BENEFICIARY—CONSIDERATION.**

As a wife, designated as beneficiary in a policy on her husband's life, which reserved to the husband the right to change the beneficiary, had no vested right, but a mere expectancy only, she did not, by joining in her husband's assignment of the policy as security for his indebtedness, become a surety for him; the absolute right to assign the policy being lodged in him, and it was not necessary that she should receive a consideration for joining in the assignment in order to bind her.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 477; Dec. Dig. ☞210.]

**4. INSURANCE ☞209—ASSIGNMENT OF POLICY—SUCCESSIVE ASSIGNMENTS.**

Where, though an assignment of a $15,000 life insurance policy as security for a debt recited that it was to secure an indebtedness of $15,000, it was the intention to protect the assignee as to insured's entire liability to it, a letter subsequently written the assignee by him, directing that in case of his death the proceeds, after the satisfaction of a $10,000 note, should be applied to relieve an accommodation indorser from liability on account of another note for $6,000, was explanatory and confirmatory of the original intent, and passed by way of assignment whatever value the policy possessed after the delivery of the first assignment, as insured was not restricted to a single assignment of the policy, which by its terms was assignable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 479; Dec. Dig. ☞209.]

**5. INSURANCE ☞213—"ASSIGNMENT" AND "CHANGE OF BENEFICIARY" DISTINGUISHED.**

An "assignment" of a life insurance policy and a "change of beneficiary" are different things, as an "assignment" is the transfer by one of his right or interest in property to another, and rests upon contract, and, generally speaking, the delivery of the thing assigned is necessary to its validity, while the power to change the beneficiary is the power to appoint, and must be exercised in the manner agreed upon in the contract of insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 483; Dec. Dig. ☞213.

For other definitions, see Words and Phrases, First and Second Series, ASSIGNMENT.]

**6. INSURANCE ☞222—ASSIGNMENT—RIGHT OF ASSIGNEE TO ASSIGN.**

Where insured, who had assigned the policy to secure an indebtedness to the assignee, wrote the assignee, directing it, in case of his death, to apply the proceeds in payment of a $10,000 note, and the balance to relieve an accommodation indorser from liability on another $6,000 note, such letter was sufficient authorization to the assignee to assign an interest in the policy to the executors of the accommodation indorser, who had been compelled to pay the note on which they were liable, and they thereby acquired such a title as was necessary to enable them to hold the policy as collateral security for the debt which they had paid, and to sustain an action upon the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 492; Dec. Dig. ☞222.]

**7. INSURANCE ☞222—ASSIGNMENT—RIGHT OF ASSIGNEE TO ASSIGN.**

Where a policy was assigned to secure certain notes, held by the assignee, an assignment of an interest therein to the executors of an accommodation indorser on one of the notes, who were required to pay the note, was valid and binding on the beneficiary, in the absence of any authorization from insured to make such assignment; the policy having reserved the right to insured to change the beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 492; Dec. Dig. ☞222.]

8. INSURANCE ☞222—TRANSFER OF POLICY AS SECURITY—RENEWAL OF SECURED NOTE—EFFECT.

Where a life insurance policy was assigned to a bank to secure insured's notes held by it, the renewal of such notes did not destroy the assignment, in the absence of any intention on the part of the insured and the bank that the renewal should have that effect.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 492; Dec. Dig. ☞222.]

9. INSURANCE ☞217—ASSIGNMENT—FAILURE TO GIVE NOTICE TO COMPANY—EFFECT.

Where, after the assignment of an insurance policy to secure an indebtedness, insured wrote the assignee relative to the disposition of the proceeds of the policy in case of his death, such letter, considered as an additional assignment, was not ineffective as against a beneficiary, though neither it nor a copy of it was filed with or assented to by the company, as required by the policy, as the provision in the policy requiring notice to the company was for its protection, and could not be set up by any one else to defeat an assignment made without compliance therewith.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 487; Dec. Dig. ☞217.]

10. BANKRUPTCY ☞143—PROPERTY PASSING TO TRUSTEE—INSURANCE POLICIES.

As the holder of a life insurance policy reserving to him the right to change the beneficiary, and which by its terms was assignable, had a transferable interest in the policy, if, notwithstanding an assignment thereof by him, an interest in the policy still remained in him, such interest passed to his trustee in bankruptcy as of the date of the adjudication, and a purchaser of his right, title, and interest acquired a right superior to that of the beneficiary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ☞143.]

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Suit by the Mutual Benefit Life Insurance Company against Myra M. Swett and others. From a decree against her, defendant named appeals. Affirmed.

Lewis Brucker, of Mansfield, Ohio, and E. L. Beach, of Saginaw, Mich., for appellant. Jacob Kleinhans, of Grand Rapids, Mich., and Wallace Foote, of Muskegon, Mich., for appellees.

Before WARRINGTON, Circuit Judge, and SATER and HOLLISTER, District Judges.

SATER, District Judge. The question for decision is: Are the Hackley National Bank of Muskegon, Mich., and the executors of Charles H. Hackley, deceased, entitled to the proceeds of the $15,000 policy issued by the Mutual Benefit Life Insurance Company of Newark, N. J., to Edward R. Swett on September 4, 1900, and made payable "to Myra M. Swett, his wife, if living, otherwise to the executors, administrators, or assigns of the said insured"; or do such proceeds belong to Mrs. Swett, who was named as his beneficiary and is now his widow? The case is here on her appeal from a decree against her.

The policy by its terms was assignable, but provided that no assignment of it should be effective until written notice of it was given

to the company. One of the special privileges accorded by it was that the insured, at any time while the policy was in force and not as signed, might change the beneficiary by returning the policy to the company with his written request for its appropriate indorsement of such change on the policy. The policy by apt language defines the owner of it to be either the person who is made such by its terms or who becomes such by its assignment. At the time the policy was issued, the bank held Swett's notes for borrowed money to the amount of $16,305, one of which, for $10,305, was unsecured. On the $6,000 note, Hackley was an accommodation indorser. Both were soon to mature. As Swett was not able to pay them, he agreed with the bank to take out a policy to secure them. He also agreed in 1896 to insure his life to protect his wife on her loan to him of some $14,000 or $15,000, which he had a few months previous given to her. She claims that the policy, whose proceeds are in question, was, in pursuance of such promise, for her benefit. On September 18, two weeks after the policy issued, Swett and his wife, without protest on her part, executed and delivered to the bank a written assignment of the policy and of "all sum or sums of money, interest, benefit and advantage whatsoever now due or hereafter to arise, or to be had or made by virtue hereof, to have and to hold unto the said Hackley National Bank to secure an indebtedness of $15,000." On September 28 the company filed a copy of the assignment in its office, and also indorsed on the original assignment the fact that a copy had been so filed, and that, if the assignment should be thereafter canceled, the bank should return the original to the company. The policy was delivered to the bank, and was never in the wife's possession, nor did she ever make any inquiry concerning it or her husband's bank indebtedness. On October 25 Swett by letter directed the cashier of the bank, in case of his death, to apply the proceeds of the policy, first, to the payment of the $10,000 note and interest; and, second, to the protection of Hackley on his indorsement of Swett's paper as he (Hackley) might direct. A copy of the letter was not transmitted to the company.

When the larger note became due, Swett paid $305 and renewed the note for the residue, which was the original principal sum. This note, and also that for $6,000, were periodically renewed, but neither of them was reduced or paid prior to his death, which occurred in October, 1900. Hackley died in February, 1905. The bank presented to his executors the $6,000 note as a claim; on June 3 following, it was paid. The bank subsequently executed and delivered an assignment of an undivided one-third interest in the policy to such executors. Shortly prior to his death Swett was adjudged a bankrupt. The trustee in bankruptcy, in consideration of $500, sold and transferred all of the right, title, and interest of Swett in and to the policy to the executors of Hackley. As the bank and Hackley's executors on the one hand, and the widow on the other, each claimed the entire proceeds of the policy ($17,448.41), the insurance company by its bill caused the respective claimants of the fund to interplead and deposited the value of the policy in court. Appropriate pleadings were interposed, and on the final hearing the result heretofore mentioned was obtained.

The contentions of the widow, in so far as they need be noticed, are that, upon the issuance of the policy, she became the sole owner, or, at least, acquired a vested interest in it, of which she could not be divested without her consent; that the assignment of the policy to the bank was, as to her, without consideration; that, if the assignment was valid, she occupied merely the position of a surety, in consequence of which the lien on the policy was released and discharged by the subsequent extensions, without her knowledge and consent, of the time of the payment of the notes held by the bank; that no change of beneficiary was possible after the policy had been assigned, and that, therefore, Swett's letter of September 25 to the bank was ineffective for any purpose; that the Hackley executors took nothing by the purchase of her husband's interest, if any, from the trustee in bankruptcy; and that in any event she is entitled to all of the funds in excess of $10,000, for the reason that the assignment of the policy was to secure only the $10,000 note due the bank. Her several claims are controverted by the bank and the Hackley executors.

[1-3] The rule is well settled that, under an ordinary policy of life insurance in which there is no reservation of a right to cut off or modify the interest of the beneficiary, the policy and the money to become due under it belong, from the time it issued, to the person named in it as the beneficiary, and that the insured is without power, whether by deed, assignment or will, or by surrender of the policy for a new one, or by any other act of his, to transfer to any other person the interest of the person so named as beneficiary. In such a policy the beneficiary acquires, the moment it is issued, a vested right which cannot be affected by any act of the insured subsequent to the execution of the policy, except it be a breach of condition. Washington Central Bank v. Hume, 128 U. S. 195, 206, 9 Sup. Ct. 41, 32 L. Ed. 370; May on Ins., § 399L (4th Ed.); Cooley's Briefs on the Law of Insurance, 3755. If, however, by the terms of the policy itself there is reserved to the insured the right, without the consent of the beneficiary, to change the appointee with the assent of the insurer, the beneficiary acquires only an expectancy and not a vested interest during the life of the insured. May on Ins., § 399M; Cooley's Briefs on the Law of Ins., 3755; Elliott on Ins., § 355; Kerr on Ins., § 231; Hopkins v. Northwestern Life Assur. Co., 99 Fed. 199, 40 C. C. A. 1 (C. C. A. 3); Hogan v. Fauerbach Brewing Co., 194 Fed. 846, 848, 114 C. C. A. 634 (C. C. A. 7); Lamb v. Mutual Reserve Fund Life Ass'n (C. C.) 106 Fed. 637; Robinson v. U. S. Mut. Acc. Ass'n (C. C.) 68 Fed. 825; Insurance Co. v. O'Brien, 92 Mich. 584, 52 N. W. 1012; Golden Star Fraternity v. Martin, 59 N. J. Law, 207, 216, 35 Atl. 908.

The right so reserved rests upon the terms of the contract, and is the same as that conferred on the insured by the certificate, charter, or by-laws of a mutual or benefit association, when insurance is effected in such an organization. As the policy to Swett stipulated that he might, on his written request of the company for its appropriate indorsement on the policy, change the beneficiary, his wife did not acquire a permanent or vested interest in it. The existence of such an interest during her husband's lifetime was made impossible by the

control over the contract of insurance given to him, independent of her will. Her right was inchoate, a mere expectancy during his lifetime, dependent on the will and pleasure of her husband as holder of the policy, and could not vest until his death happened with the policy unchanged. His control over the policy was, subject to its items, as complete as if he himself had been the beneficiary. Denver Life Ins. Co. v. Crane, 19 Colo. App. 191, 200, 73 Pac. 875. The wife had no vested interest which she could assign until the death of her husband—no assignable or transferable interest in the policy until some right of action on it accrued in her favor. May on Ins., § 399 F; Sabin v. Phinney, 134 N. Y. 423, 428, 31 N. E. 1087, 30 Am. St. Rep. 681. As she had but a mere expectancy at the time of the assignment, she did not become surety for her husband, because the absolute right to assign the policy was lodged in him. Having no property right in the policy (Golden Star Fraternity v. Martin, 59 N. J. Law, 207, 216, 35 Atl. 908), she pledged nothing for his debts; nor was it necessary that she should receive a consideration for her joining with him in the assignment in order to bind her, because in so doing she parted with nothing of appreciable value. The bank's rights were as secure without her joinder as with it. The ownership of the policy was not in her, but in her husband. The policy recognizes that ownership of it may be acquired by assignment. The bank by the assignment became its qualified owner, to the full extent necessary to satisfy the husband's indebtedness from its proceeds.

[4] The claim that the evidence of the cashier shows that the policy was assigned to protect only the $10,000 note cannot be sustained, whether his evidence, or the agreed statement of facts, or both, be considered. The assignment, it is true, named an indebtedness of but $15,000; but it is clear from the record that Swett intended to protect the bank as to his entire liability to it. His letter of September 25 to the cashier expressly directing that, after the satisfaction in full of the $10,000 note, the residue of the proceeds of the policy should be applied to relieve Hackley from liability on account of his indebtedness, was explanatory and confirmatory of his original intent and passed by way of assignment whatever value the policy possessed remaining after the delivery of the instrument jointly executed by himself and wife. He was not restricted to a single assignment of the policy. Manton v. Robinson, 19 R. I. 405, 34 Atl. 148.

[5] Whether, on account of Swett's indebtedness to the bank exceeding the amount of the policy, the assignment was in effect a change of beneficiary, is not in our judgment important to determine. However, the assignment of a policy and a change of beneficiary are not the same, but different, things. An assignment is the transfer by one of his right or interest in property to another. It rests upon contract, and, generally speaking, the delivery of the thing assigned is necessary to its validity. The power to change the beneficiary is the power to appoint. The power of appointment must be exercised in the manner agreed upon in the contract of insurance. Niblack, Benefit Societies & Acc. Ins. (2d Ed.) § 173. Swett made an assignment of the policy. He did not exercise or attempt to exercise the power to ap-

point another beneficiary. His wife still remained such. She takes nothing as beneficiary, but that is because the debts, which the policy was assigned to secure, consumed the entire proceeds of the policy.

[6, 7] The bank assigned an undivided one-third interest in the policy to the Hackley executors, for the reason that they had been obliged to pay to it Swett's $6,000 note which Hackley had indorsed. Swett's letter of September 25 was sufficient authorization for its so doing. The interest thus acquired by the executors vested the title in the executors, so far as that was necessary to enable them to hold the policy as collateral security for the debt which they had paid and to sustain an action upon the policy. In the absence of such an authorization, the assignment to them was valid and binding on the beneficiary. Corcoran v. Mut. Life Ins. Co., 183 Pa. 443, 39 Atl. 50.

[8] In the absence of any evidence of an intention on the part of the bank and Swett that the renewals of his notes evidencing his indebtedness to the bank should destroy the assignment of the policy, such renewals did not have that effect. Corcoran v. Mut. Life Ins. Co., supra.

[9] The claim that Swett's letter of September 25, considering it as an additional assignment, was ineffective to confer any right on the bank, because neither it nor a copy of it was submitted to, filed with, or assented to by the company, is not meritorious. A provision in a life insurance policy that an assignment of it shall not become effective until written notice of it is given to the company is for its protection, and cannot be set up by any one else to defeat an assignment made without compliance therewith. 19 Am. & Eng. Ency. Law, 96; May on Ins. § 396; Hewins v. Baker, 161 Mass. 320, 37 N. E. 441; Marcus v. St. Louis Mut. Life Ins. Co., 68 N. Y. 625.

[10] As Swett had a transferable interest in the policy and the authority to change the beneficiary at will, if, notwithstanding his assignment to the bank, any interest still remained in him, such interest passed to his trustee in bankruptcy as of the date of adjudication. Loveland, Bank. (4th Ed.) 817, 818. Whether the Hackley executors believed the title which passed to the trustee to possess intrinsic value or merely desired to safeguard the interest in it which they had already acquired is immaterial. For a valuable consideration they purchased whatever the trustee had. His assignment and transfer to them of all of Swett's right, title, and interest in and to the policy gave them a right superior to that of his widow.

Other claims made by the widow have been considered, but need not be noticed. We find no error in the record.

The trial court is affirmed.