Frances Corcoran, for the use of Wm. H. Dill, for the use of S. B. Philson, cashier, *v.* The Mutual Life Insurance Company of New York, Appellants.

*Evidence—Letter—Province of court and jury.*

Where a letter produced in evidence is plain and direct in its statements, and without ambiguity, its construction is for the court.

*Insurance—Life insurance — Notice of assignment—Waiver—Letter— Loss of policy—Evidence—Province of court and jury.*

A life insurance company paid the amount of a policy of insurance on the life of C. to C.'s wife. It was claimed that the policy was lost, and before the policy was paid, C.'s wife was required to give to the company a bond of indemnity. Subsequently suit was brought upon the policy by a person claiming under an assignment from D. to whom C. and wife had assigned the policy. The policy stipulated that the company would take no notice of any assignment until it had been furnished with a duplicate, or a certified copy thereof, delivered to the company at its principal office. The company set up this stipulation as a defense, and the plaintiff replied that the company had waived the stipulation. The plaintiff gave in evidence a letter from the assignee to the secretary of the company, referring to the assignments, and asking whether he should forward the policy, or should send the assignments only. The secretary replied that the company had no record of the transfers, but if furnished with duplicate or certified copies of the assignments, the company would file them as notice of claim, and directed him to communicate with the general agent of the company in Philadelphia, the principal office being in New York. Plaintiff proved that he sent the policy by a messenger to the agent in Philadelphia, and that the messenger in the agent's absence showed the policy to a clerk, who, after looking at it, returned it without comment. No copies were in fact sent to either the New York or the Philadelphia office,

and no note or memorandum of the assignments were found in either office. *Held*, (1) that the construction of the letter of the secretary, and whether it was a waiver of the stipulation in the policy, were questions for the court; (2) that the jury should have been instructed that if the production of copies for filing was actually waived by the Philadelphia office, then the plaintiff could recover, but if not, then he must look to the person who actually received the money; (3) that the fact that C.'s wife did not produce the policy when she demanded payment, but alleged that the policy was lost, raised no presumption that the policy was held by another.

In an action upon a policy of insurance by an assignee of the policy, the plaintiff insisted upon a waiver of a provision in the policy that re quired copies of assignments to be furnished to the company for filing by it as notice of claim by the assignee, and asked the court to permit the jury to find proof of such waiver in a letter signed by the secretary of the com- pany. The plaintiff presented a point to the effect that the letter was not an agreement signed by the president or secretary of the company, waiv- ing or changing any of the terms of the policy. The court replied, "I cannot affirm this point," but added that the letter of the secretary must be taken as speaking not for himself as an individual, but for the com- pany as its officer. *Held*, that the answer, while amounting to a denial of the point, placed that denial upon a ground not raised or involved in any phase of the controversy, and was therefore erroneous.

Argued Oct. 14, 1896.    Appeal, No. 116, Oct. T., 1896, by defendants, from judgment of C. P. Somerset County, May T., 1895, No. 2, on verdict for plaintiffs.    Before STER- RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Assumpsit on a policy of life insurance.

The facts appear by the charge of the court and the opinion of the Supreme Court.

The court charged in part as follows:

On the 10th day of August, 1877, James Corcoran took an insurance policy in the defendant company on his life for $4,000, payable in the event of his death to his wife, Frances Corcoran, for her sole use, if living, and if not living, to their children or the guardian of the children for their use.    The premiums were paid by James Corcoran.    On the 13th of October, 1890, the policy was assigned by Corcoran and his wife to Wm. H. Dill, for the nominal sum of $1.00 expressed in the assignment, but the plaintiff contends that the real consideration was a debt owing by Corcoran to Dill, which was represented by a note in

the plaintiff's bank, and the predecessors of that note. On the part of the defendant it is contended that it was not a debt of Corcoran, but of the Presque Isle Lumber Company, and that Corcoran was merely an indorser. This, gentlemen, is a question of fact which you will determine from the evidence.

If Dill was a creditor of Corcoran when the assignment was made, as the plaintiff claims, his title to the policy was good. If the assignment was without consideration, no title passed. If Dill acquired an interest by the assignment to him, he could assign it to another, and he did assign it to S. B. Philson in March, 1892. It is not denied that Philson obtained it on an ample consideration, and he had a perfect right to be made whole on the insurance, unless he made a mistake in taking the steps to secure himself.

When he received the policy he advised the company at its office in New York by a letter in evidence, dated March 29, 1892, and made some inquiries as to the steps necessary to secure himself as the assignee of the policy. The letter reads as follows:

" MEYERSDALE, Somerset County, Pa., March 29, 1892.
" SEC'Y OF THE MUTUAL LIFE INS. CO., New York.

"Dear Sir:—On October 13, 1890, policy No. 185,117 in your company was assigned by Frances Corcoran and James Corcoran to Wm. H. Dill; of this assignment no doubt you have a record. On March 10, 1892, Mr. Dill assigned the same to me. Shall I forward the policy for your acceptance of the same, or will the assignment be sufficient if it is presented for acceptance?' Your reply in the enclosed envelope will greatly oblige.    Very respectfully yours,

" S. B. PHILSON, Cashier."

On the 2d day of April, 1892, the company, by its corresponding secretary, replied as follows:

"Your favor of the 29th ult. received, and we beg to state that we have no record of the transfers of policy 185,117—Corcoran, as mentioned in your letter. If we are furnished with duplicates or certified copies of the transfers (by a Notary) we will file them as notices of claim, as the children have a contingent interest in the policy. Please communicate with the company through our General Agent, Wm. H. Lambert, Philadelphia, Pa.    Yours Truly,

" H. E. DUNCAN, JR., Corresponding Secretary."

In pursuance of this correspondence, the plaintiff says, he sent the policy to his brother in law, H. F. Gardill, in Philadelphia, for presentation at the Philadelphia office of the company, and you have the testimony of Gardill as to his submitting the policy, with the assignments, at said office, to one of the clerical force, in the absence of Mr. Lambert.

The policy provides in the fifth clause, on its face, that "the contract between the parties hereto is completely set forth in this policy and application therefor, taken together, and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing signed by the President or Secretary of the company, whose authority for this purpose will not be delegated." On the back of the policy, under the word "Assignments," it is provided : "This company will not take notice of any assignment of this policy, until a duplicate or certified copy thereof shall be delivered to the company at its principal office ; and under no circumstances will the company assume any responsibility for the validity of such assignment. If any claim be made under an assignment, proof of interest to the extent of the claim will be required."

The defendant, the insurance company, now contends that there can be no recovery in this case because these provisions, which we have read, were not strictly complied with. It is conceded on part of the plaintiff that they were not strictly complied with, but he contends that such compliance with the terms of the policy was waived by the properly constituted representatives of the company. . . .

[You will first inquire from the evidence in the case whether the terms which we have read were intended to be departed from, to be dispensed with, to be set aside ; and whether instead of reporting at the New York office, the principal office of the company, the plaintiff was directed to apply to the office in Philadelphia ; whether he was turned over from the principal office in New York to the office in Philadelphia. If he was, then it is not necessary that he should report to the New York office ; it was not necessary then that he should file his papers in the principal office at New York, if the officers of the company in New York meant by their correspondence, and by any other evidence you have in the case, to turn the plaintiff over to the Philadelphia office.] [1]

[There is still another branch of this evidence which is relied on to make out a waiver, and that refers to what took place in Philadelphia. Having been referred to the Philadelphia office, the plaintiff did not file a certified copy of the assignment, nor a duplicate thereof; but he produces a witness who says he went into the office with the original policy, having upon it the original assignments, and presented it to the clerical force of that office. The fact that Mr. Lambert was not himself seen cannot defeat the waiver, if the person who represented him in the office did what was tantamount to a waiver. Mr. Gardill says that he handed the policy to one of the persons engaged in the office, one of the clerks, and states that after some examination of it and reference to one of the books, in which he thinks some writing was done by the clerk, the policy was returned to him. It does not appear that he was told that anything more was required. He was not informed that he must produce a duplicate or certified copy, but he says the policy was returned to him, and he took it and returned it to Mr. Philson. If that was meant to dispense with the necessity of producing a duplicate or certified copy, then there can be no complaint interposed now to defeat this action that such a copy was not furnished, because it would amount to a waiver.] [2]

Plaintiff's points and answers thereto were as follows :

1. If the jury believe that shortly after the assignment of the policy by Wm. H. Dill to S. B. Philson, and in the lifetime of James Corcoran, the said S. B. Philson notified the defendant company of the assignment of Frances Corcoran and James Corcoran, dated October 13, 1890, to Wm. H. Dill, and of the assignment by W. H. Dill to said S. B. Philson, dated March 10, 1892, with the inquiry if he should forward the policy for the acceptance of the company, or if the assignments would be sufficient if presented for acceptance, with request for reply; and that H. E. Duncan, Jr., corresponding secretary of defendant company, in writing directed said Philson to communicate with the company through the company's general agent, Wm. H. Lambert, of Philadelphia, Pa., and that said Philson promptly thereafter, in April, 1892, caused the original policy, with the original assignments attached thereto, to be exhibited at the office of said general agent, Wm. H. Lambert, at Philadelphia,

Pa., during business hours, to one of the clerks of said Lambert in charge of the business of said general agent—the said Lambert then being temporarily absent from the office—and that said clerk examined said policy and assignments, and after examination carried the said policy and assignments to a book or record in said office and examined and compared the policy, assignments and such book or record, and wrote or feigned to write in or upon said book, and afterwards returned the policy and assignments to the person who at said Philson's direction had presented them; and that said Philson subsequently, and in the lifetime of said James Corcoran, had correspondence with the defendant company at New York, stating to the company in said correspondence that he held the policy as collateral security, and asking if the company would purchase it if he acquired an assignment of it for its cash value—an absolute assignment; and correspondence also with said Wm. H. Lambert, general agent, also in the lifetime of James Corcoran, inquiring if all payments had been made on said policy, and if it was good for $4,000 in the event of the death of James Corcoran, then the jury may infer that the company waived the requirements referred to in the policy that the company will not take notice of any assignment of the policy until a duplicate or certified copy thereof shall be delivered to the company at its principal office. *Answer:* If you find the facts as given in the point, and that the company by directing the plaintiff to communicate through Mr. Lambert intended to waive presentation of the papers at the principal office in New York, and also that when the policy and the assignments were presented at the office of Mr. Lambert, the latter by his agent waived a formal compliance with the conditions on the back of the policy relative to assignments, requiring a duplicate or certified copy thereof to be delivered to the company, the law of the point is correct. I leave it to you to ascertain from all the evidence bearing upon it whether such waiver was intended. [3]

2. As the evidence in the case shows that the defendant company paid the amount of the policy to Frances Corcoran without a surrender of the policy, and without due proof of the loss or destruction of said policy, the presumption was that the policy was outstanding in the hands of S. B. Philson, of which the evidence shows the company had knowledge by letter and

otherwise, the company cannot set up the payment of the policy to Frances Corcoran as a defense to this action. *Answer :* If the facts are as stated, the mere ground of payment to Mrs. Corcoran cannot avail to defeat the plaintiff's action. [4]

Defendant's points and answers thereto among others were as follows :

7. That if the jury find from the evidence that the policy in suit contains a provision or condition or agreement " that the contract between the parties hereto is completely set forth in this policy and the application therefor, taken together, and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing signed by the president or secretary of the company, whose authority for this purpose will not be delegated ; " and also provides that the provisions on the back of the policy are made a part thereof, and that the provision on the back provides that " this company will not take notice of any assignment of this policy until a duplicate or certified copy thereof shall be delivered to the company at its principal office ; " and also find that neither the president nor the secretary waived in writing the provision requiring a duplicate or certified copy of the assignment to be delivered to the principal office in New York, and that they did not delegate their authority, and that no duplicate or certified copy was delivered to the company at its principal office in New York, then there can be no recovery. *Answer :* That is affirmed, with the modification that a waiver may be established by parol and must not necessarily be in writing. [8]

8. That if the jury find that the policy put in evidence by the plaintiff provides that " the contract between the parties hereto is completely set forth in this policy and the application therefor, taken together, and none of its terms can be modified, nor any forfeiture under it waived, except by an agreement in writing signed by the president or secretary of the company, whose authority for this purpose will not be delegated ; " and that the provisions on the back of the policy are hereby referred to as part of this contract as if they were recited at length, namely, " that this company will not take notice of any assignment of this policy until a duplicate or certified copy thereof shall be delivered to the company at its principal office ; " and also find that the principal office is in the city of New York,

and that the plaintiffs, W. H. Dill and S. B. Philson, both failed to deliver to the defendant company, at its principal office in New York, a duplicate or certified copy of the assignment of the policy, as required by the terms of the policy ; and that the defendant company paid the full amount due and payable on the policy to Frances Corcoran,.the beneficiary named in the policy, then there can be no recovery, and the verdict should be for the defendant. *Answer :* That is affirmed, unless you shall find from the evidence that strict compliance with the conditions mentioned was waived by the company. [9]

10. That the exhibition of the policy, with what purports to be assignments thereof attached, to a clerk or bookkeeper in the Philadelphia office of the Mutual Life Insurance Company of New York, which is in charge of W. H. Lambert, the general agent for the state of Pennsylvania, was not a delivery of a duplicate or certified copy thereof to the defendant company at its principal office, nor at the Philadelphia office, and such an exhibit at the company's office in Philadelphia was not a compliance with the terms of the contract, and did not constitute notice to the company ; and without a delivery of a duplicate or certified copy to the principal office in New York, there can be no recovery. *Answer :* This point is refused. Whether such exhibition of the policy constituted sufficient notice to the company depended upon the fact whether more formal notice, or a rigid compliance with the terms of the contract was waived. [10]

11. That if the jury find that the principal office of the defendant company is in New York, and that the Philadelphia office of the company is an agency office, with W. H. Lambert in charge as the chief officer, and as agent for the state of Pennsylvania, and that all the clerks, bookkeepers, cashiers and employees in said office are subordinated under him, then nothing said or done by the general agent for Pennsylvania, W. H. Lambert, or any of his subordinates or employees, as proved in this case by the evidence, can waive or excuse the nondelivery of a duplicate or certified copy of the assignments at the principal office in New York. *Answer :* This is refused. The company in New York might act through Mr. Lambert, and he through his properly constituted agents or clerks ; it might be impossible for a person having business with either office to see the official head and confer with him. [11]

12. That if the jury find from the evidence that the policy on which suit is brought was issued on the 10th day of August, A. D. 1877, upon the life of James Corcoran, for the benefit of his wife, Frances Corcoran, but in the event of James Corcoran surviving the wife, then for the benefit of their children; and also find that at the time of the execution of the alleged assignment they had three children living, then the children had a vested interest in the policy at the time of its delivery, and no subsequent act of assembly could divest their interest, and no valid assignments could be made of the policy unless the children consented and joined in the assignment; and if they further find that the children did not consent and join in the execution and delivery of the alleged assignment, the verdict must be for the defendant. *Answer*: That point is refused. [12]

13. That the letter of the corresponding secretary to S. B. Philson, of the date of April 2, 1892, offered in evidence by the plaintiff, was not an agreement in writing signed by either the president or the secretary, modifying or waiving any of the terms, provisions or requirements of the contract, and was no direction to S. B. Philson to exhibit the policy with assignments attached to W. H. Lambert or the Philadelphia office. *Answer :* I cannot affirm this point.   The letter of Philson was to the New York office of the company, and the reply of the corresponding secretary must be taken to speak for the company and not for himself. [13]

15. That on the pleadings and all the evidence in the case, the verdict must be for the defendant.   *Answer :* That point is refused. [14]

Verdict and judgment for plaintiff for $3,137.69.   Defendant appealed.

*Errors assigned* among others, were, (1–4, 8–14) above instructions, quoting them.

*Wm. J. Baer*, with him *Chas. A. Robb*, for appellant.—A general agent's power to change, modify or waive any of the terms of the contract as expressed in the policy are limited : 11 Am. & Eng. Ency. of Law. 336, 343.

The defendant company is a mutual company, and in such company the policy holder and the assignee are presumed to

know the contents of the policy, and also to know the agent's authority, and the scope of his employment: 11 Am. & Eng. Ency. of Law, 320, 324; Mitchell v. Ins. Co., 51 Pa. 402.

Representations and acts of an agent contrary to the terms of a policy will not be sufficient, unless sanctioned by the company: N. Y. Life Ins. Co. v. Eggleston, 96 U. S. 572; Union Mut. Life Ins. Co. v. Mowry, 96 U. S. 544; Fire Ins. Co. v. Dunham, 117 Pa. 469; Lantz v. Vermont Life Ins. Co., 139 Pa. 546.

Representations cannot be enlarged, or instructions divided, for the purpose of creating an estoppel: 7 Am. & Eng. Ency. of Law, 24; Irwin v. Nashville Ry., 92 Ill. 103.

It was for the court to construe the letter and policy: Wachter v. Assurance Co., 132 Pa. 428; Fire Ins. Co. v. Williamson, 26 Pa. 196; Desilver v. Ins. Co. 38 Pa. 130; Inland Ins. & Dep. Co. v. Stauffer, 33 Pa. 397; Trask v. State Fire & Mar. Ins. Co., 29 Pa. 198; Kensington Bank v. Yerkes, 86 Pa. 227; Universal Ins. Co. v. Weiss, 106 Pa. 20; West Branch Ins. Co. v. Helfenstein, 40 Pa. 296; Weisenberger v. Harmony Fire Ins., 56 Pa. 443; Smith v. Ins. Co., 103 Pa. 177; Girard Fire Ins. Co. v. Hebard, 95 Pa. 45.

A waiver is an intentional relinquishment of a known right: 28 Am. & Eng. Ency. of Law, 526; West v. Platt, 127 Mass. 372; Diehl v. Adams Co. Mut. Ins. Co., 58 Pa. 443; Beatty v. Lycoming Co. Ins. Co., 66 Pa. 9; Henry v. Gilliland, 103 Ind. 177; 7 Am. & Eng. Ency. of Law, 5; Butchers' Assn. v. Boston, 139 Mass. 290; Ins. Co. v. Evans, 9 Md. 20.

Waiver is a question for the court: Marland v. Royal Ins. Co., 71 Pa. 393; Pottsville Ins. Co. y. Minnequa Springs, 100 Pa. 137; Greene v. Lycoming Ins. Co., 91 Pa. 387; Marvin v. Universal Life Ins. Co., (N. Y.) 11 Reporter, 780; Hook v. Mut. Ins. Co. of Berks Co., 160 Pa. 229.

It will be noticed that on all the facts in the above case, the evidence was insufficient to establish a waiver, and that the case was determined on the question of estoppel, a question not raised in the case on trial, and if raised, could not have been established by the evidence: Mentz v. Fire Ins. Co., 79 Pa. 475; Lycoming Ins. Co. v. Updegraff, 40 Pa. 311; Fire Ins. Co. v. Dunham, 117 Pa. 460; Lantz v. Vermont Life Ins. Co., 139 Pa. 546; Langan v. Royal Ins. Co., 162 Pa. 357; Stauffer v. Penn. Mut. Ins. Co., 164 Pa. 199.

Where the facts are in dispute, the judge should give hypothetical instructions, applying the law to such facts as there is evidence tending to prove, leaving the facts to be determined by the jury : Bartley v. Williams, 66 Pa. 329 ; Craighead v. Wells, 21 Mo. 404 ; Carlisle v. Hill, 16 Ala. 398 ; King v. King, 37 Geo. 205 ; Talbot v. Mearns, 21 Mo. 427 ; McKinney v. Snyder, 78 Pa. 497.

The giving of inconsistent instructions is error, for the reason that the jury will be as likely to follow the one as the other: Henschen v. O'Bannon, 56 Mo. 289 ; Pond v. Wyman, 15 Mo. 175 ; Jones v. Talbot, 4 Mo. 285 ; Clem v. State, 31 Ind. 480 ; Selin v. Snyder, 11 Serg. & Rawle, 310 ; Murray v. Com., 79 Pa. 311 ; Rice v. Olin, 79 Pa. 391 ; Adams v. Macfarlane, 65 Me. 143 ; Glasgow v. Lindell, 50 Mo. 60 ; Baxter v. People 8 Ill. 380.

*Francis J. Kooser*, with him *Ernest O. Kooser, W. H. Koontz* and *John G. Ogle*, for appellee.—We think the right of the jury to pass upon the question is sustained by numerous rulings of this court : Mix v. Royal Ins. Co., 169 Pa. 645 ; Gould v. Ins. Co., 134 Pa. 588 ; McFarland v. Ins. Co., 134 Pa. 590 ; Inland Ins. Co. v. Stauffer, 33 Pa. 404; Thierolf v. Ins. Co., 110 Pa. 41 ; Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568.

The case of Wachter v. Ins. Co., 132 Pa. 440, is further cited to show that this case should not have gone to the jury. But the cases differ materially.

In Girard Fire Ins. Co. v. Hebard, 95 Pa. 45, there was no evidence at all of a waiver, and in Marland v. Royal Ins. Co., 71 Pa. 393; Pottsville Ins. Co. v. Minnequa Springs Co., 100 Pa. 137 ; Greene v. Lycoming Ins. Co., 91 Pa, 387, the premiums were not paid, and in the first of these cases the policy not lifted. Besides, these cases are criticised and practically reversed in Arthurholt v. Susquehanna Ins. Co., 159 Pa. 1.

Hook v. Ins. Co. of Berks Co., 160 Pa. 229 and Bard v. Penna. M. F. Ins. Co., 153 Pa. 257, are without application to this case, because in them the notice or information of additional insurance was given to a director of the company. And in Ins. Co. v. Stauffer, 33 Pa. 397, cited in Bard v. Penna. M. F. Ins. Co., case, it is held that a " director of a company is not one of its

executive officers to whom the details of its business are committed," etc.   Notice to a director is not notice to the company.

It is certainly needless to answer such cases as Lantz v. Vermont L. Ins. Co., 139 Pa. 546 ; Nat. Mut. Aid Society v. Lupold, 101 Pa. 111; Langan v. Royal Ins. Co., 162 Pa. 357, for the principles stated in them do not arise in the case at bar.

OPINION BY MR. JUSTICE WILLIAMS, January 4, 1897 :

The policy sued on this case was issued by the defendant company upon the life of James Corcoran, and was payable to his wife Frances Corcoran if she survived him, otherwise to their children.   The policy was obtained in 1877.   James Corcoran died in January, 1894, leaving his wife and three children to survive him.   Mrs. Corcoran made proof of her husband's death, and claimed the amount due upon the policy as the payee named therein.   She alleged that the policy had been mislaid or lost, and was required to make such proof of the fact as she was able, and to give a bond of indemnity to the company before the insurance money was paid to her.   This she did, and on the 30th day of April, 1894, the money was paid to her.   On the 25th day of February, 1895, nearly one year after the payment to Mrs. Corcoran, this action was brought, the plaintiff claiming title to the policy by virtue of an assignment by James and Frances Corcoran to W. H. Dill, made in October, 1890, as collateral security for an indebtedness and an assignment from Dill to himself on the 10th day of March, 1892, accompanied by an assignment of the indebtedness to secure which the assignment to Dill had been made.   The policy stipulated among other things that the company would take no notice of any assignment until it had been furnished with a duplicate, or a certified copy thereof, delivered to the company at its principal office.   The defendant set up as a defense to the action the payment to Mrs. Corcoran, and the provision of the policy just referred to.   To this the plaintiff replied that the company had waived the stipulation ; and upon this question the case went to trial.   As a proof of waiver the plaintiff gave in evidence his own letter to the secretary of the company, of March 29, 1892, referring to the assignment by the Corcorans to Dill, and by Dill to himself, and asking whether he should forward the policy to the company to have an approval of the transfer made

or should send the assignments only. He followed this with the reply of the secretary dated on the 2d of April, 1892, saying that the company had no record of the transfers referred to, but if furnished with duplicate or certified copies of the assignments the company would file them as a notice of claim, and directing him to communicate with the general agent of the company, Mr. W. H. Lambert, of Philadelphia. He then proved that he sent the policy by a messenger to Mr. Lambert, who, in Mr. Lambert's absence, showed the policy to a clerk, who after looking at it returned it without comment. No copies were in fact sent to either the New York or the Philadelphia office, and the proof was that no note or memorandum of the transfers could be found in either office. Several of the assignments of error raise the question, on whom did the duty of putting a construction on the letter of the secretary of the company of April 2, 1892, rest? The learned judge appears to have submitted the question to the jury. There was no ambiguity about the letter. It was plain and direct in its statements. Its construction was therefore for the court. It was a fact that might be taken into consideration by the jury that such a letter was written, and its legal effect as declared by the court was to be accepted by them and acted upon, but the construction of the letter and whether it was a waiver of the stipulation in the policy were questions for the court. Substantially the same thing must be said in regard to the third assignment. What the letter meant was again referred to the jury in the answer to the plaintiff's first point. The court should have told them that the letter authorized the presentation of the copies at the Philadelphia office, and called their attention to the evidence showing what actually transpired when Gardell took the policy and assignments there and exhibited them. If the production of copies for filing was actually waived by the Philadelphia office then the plaintiff should recover. If it was not, then he must look to Mrs. Corcoran or the person who received the money that belonged to him. The fourth assignment must also be sustained. The policy was issued to Mrs. Corcoran. If, as appeared at the trial, there had been no such notice of a transfer given at the time the money was paid to her as the policy requires, the fact that she did not produce the policy, but alleged it to be lost, raised no presumption that the policy was

held by another.  If Mr. Philson then held a valid transfer of the policy to himself, he was advised by the terms of the policy that it was his duty to send copies of the assignments under which he claimed title to the company for filing, and that if this was not done no notice would be taken of information received in any other manner affecting the ownership of the policy.  It was his duty to the company no less than to himself, to give notice in the manner provided for.  If he did not do this, but allowed the proofs of death to be made and the money claimed and actually paid in good faith to the apparent owner, he is in no position to invoke a presumption such as was held to exist in the answer to his second point.  An additional remark should be made in regard to the thirteenth assignment of error.  The complaint in this assignment is that the point to which it refers was not answered at all.  The point asked the learned judge to instruct the jury that the letter from the secretary of the defendant company, of April 2, 1892, was not an agreement signed by the president or secretary of the company, waiving or changing any of the terms of the policy, or an instruction to the plaintiff that it would be sufficient notice if he exhibited the policy and assignments to Mr. W. H. Lambert at the Philadelphia office.  This was but another mode of asking the court to expound the letter, and not to refer it to the jury for exposition.  The court replied, " I cannot affirm this point," but added that the letter of the secretary must be taken as speaking not for himself as an individual, but for the company as its officer.  This is entirely correct.  The trouble is that it misses the question raised by the point, and disposes of another not in controversy.  The plaintiff was insisting upon a waiver of the provision in the policy that required copies of assignments to be furnished to the company for filing by it as notice of claim by the assignee, and was asking the court to permit the jury to find proof of such waiver in the letter.  The point in substance asked the court not to submit the construction of the letter to the jury but to instruct them in its meaning and effect.  The answer, while amounting to a denial of the point, places that denial upon a ground not raised or involved in any phase of the controversy.  We have already said that it was the duty of the court to say what the letter of the secretary meant, and whether it was or was not a waiver of any provision

of the policy.    If it was not, the evidence upon this question was narrowed down to what took place in Philadelphia.    Unless the production of copies was in fact waived by W. H. Lambert or his clerks, in their interview with Gardell, we can see no ground for a recovery by the plaintiff against the company. What other remedy may be within his reach is a question not raised on this record.

The judgment is now reversed and a venire facias de novo awarded.