Draper Paper Mills to Use, Appellant, *v.* Huff, Barnes & Opie, Inc.

Argued April 26, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Clyde A. Armstrong,* and with him *Charles M. Thorp, Jr.,* of *Thorp, Bostwick, Stewart & Reed,* for appellant,

*T. M. Gealey,* and with him *Ellsworth Jordan,* for appellee.

OPINION BY STADTFELD, J., October 2, 1933:

Niagara, Lockport and Ontario Power Company, use-plaintiff, instituted this suit in assumpsit in the name of the Draper Paper Mills, Inc., as legal plaintiff, against Huff, Barnes & Opie, defendant, to recover the sum of $1,222.65, with interest thereon from March 20, 1929. The case was tried before McNAUGHER, J., and a jury. The jury rendered a verdict for the defendant. Appellant then filed motion for judgment n. o. v. and motion for new trial. Both motions were refused. The facts are not in dispute.

On March 1, 1929 and subsequent thereto, Draper Paper Mills, Inc., was indebted to appellant for electrical power in the sum of $2,890.97. Prior thereto appellee had contracted to purchase from the Draper Paper Mills, Inc., a carload of paper for the contract price of $1,222.65.

Under date of March 4, 1929, Draper Paper Mills, Inc., being then indebted to appellant in the amount aforesaid, and preparing the shipment to appellee, as aforesaid, addressed the following letter to the latter: "March 4, 1929. Huff, Barnes & Opie, Inc., 33 Terminal Warehouse, Pittsburgh, Pa., Attn. Mr. F. Wittsche, Secy., Gentlemen: With reference to the carload of paper that we are now making, and which is nearly completed, for the Pittsburgh Provision & Packing Company, beg to advise that we want to assign the proceeds to the Niagara, Lockport & Ontario Power Company, Electric Building, Buffalo, New York. We trust that it will not inconvenience your accounting department to do this for us, particularly as we feel that each individual connected with the power company with whom we have come in contact, either directly or indirectly, have our best interests at heart.

Thanking you, we remain, very truly yours, Draper Paper Mills, Inc., John R. Draper. cc to H. C. Mather, Treas., cc to Mr. Albright."

Appellee received the original of the said letter and appellant a copy thereof. A few days thereafter, under date of March 12, 1929, appellant forwarded to appellee the following letter: "March 12, 1929, Huff, Barnes & Opie, Inc., 33 Terminal Warehouse, Pittsburgh, Pa., Gentlemen: Attn: Mr. F. Wittsche, Secretary. We are in receipt of copy of a letter written you on March 4th by the Draper Paper Mills, Inc., Mr. John R. Draper, authorizing your company to make payment direct to this company for a carload of paper which was in process of making at the time, and which it was expected would be shipped out in the course of a few days. We are this morning in receipt of advice to the effect that the carload shipment will undoubtedly go forward within the next day or so, and we are writing to ask that you be good enough to confirm that payment will be made by you direct to this company for credit to our account with the Draper Paper Mills. Thanking you in advance for your kindness in confirming the arrangement, we would request that when payment is made, same be sent direct to this office instead of to our branch office in Syracuse, as was done in the case of a similar shipment during the month of December. Yours very truly, H. C. Mather, Treasurer. HCM:C" (Copy to Mr. Draper, copy to Mr. J. J. Albright, Jr.)

The above letter was received by, and its contents known to, appellee on or prior to March 16, 1929. To this letter, appellee wrote to appellant, in reply, on March 16, 1929 as follows: "March 16, 1929, Niagara, Lockport & Ontario Power Co., Buffalo, N. Y., Gentlemen: Have your letter of the 12th inst., and note what you say in regard to the Draper account. Mr. Draper is making up several cars for us, and, of

course, if he authorizes us to pay you, we will follow his instructions and check will be sent to you instead of to the mill. We have as yet not heard from Mr. Draper to the effect that payment was to go to you, in fact, we have no invoice for any shipment that he has made. When he does make shipment and send us invoice, he will very likely advise us to pay you, and you may rest assured that remittance will be sent you. Yours very truly, Huff, Barnes & Opie, Inc., F. Wittsche.''

On or about March 19, 1929, appellee received an invoice from the Draper Paper Mills, Inc., for the said shipment of paper, on which there was a notation that the invoice and the proceeds of sale had been assigned to John R. Draper, individually. Appellee immediately forwarded payment to the said John R. Draper, without any further communication with appellant.

Subsequently appellant learned of the said payment, called appellee with respect thereto, and, under date of April 4, 1929, appellee wrote appellant as follows: ''(April 4, 1929, Received Treasurer Department, N. L. & O. P. Co.), Niagara, Lockport & Ontario Power Co., Electric Building, Buffalo, N. Y., Gentlemen, Referring to telephone conversation regarding remittances to the Draper Paper Co., which should have been sent to you, looking up our files, we find we have a letter dated March 4th, which states, as you said, the Pittsburgh Provision & Packing Co.'s car was to be paid to you, and under date of the 16th ult., when the invoice for this car was mailed, we received a letter, copy of which is enclosed. So you see the instructions given us under date of March 4th were revoked in this letter and we could therefore not make payment to you. The car for the Harry G. Preston Co. has never been shipped. It is still unfilled. According to notation on this second letter, copy was sent to you also. Whenever we get instructions from Mr. Draper

to make payment to you for anything he ships us, we will be glad to do it, but without his instructions or consent, we cannot do so. Yours very truly, Huff, Barnes & Opie, Inc. (Signed)' F. Wittsche. FW''

Appellant pleaded and introduced evidence of an oral assignment from Draper Paper Mills, Inc., to appellant and also the letters hereinbefore recited, as not only a confirmation of the oral assignment, but as constituting in themselves an assignment to appellant.

The said letters of March 4 and March 12, 1929, were admitted by appellee to have been received by it prior to its remittance to Draper individually. There was no dispute concerning the writing, forwarding or receipt of any of the letters in evidence.

From the judgment entered on the verdict in favor of defendant, this appeal is taken by use-plaintiff.

The assignments of error relate, inter alia, to the charge of the court to the jury, the refusal to enter judgment in favor of plaintiff n. o. v., and the refusal of motion for new trial.

Use-plaintiff, in its statement, pleaded an oral assignment by legal plaintiff of its account against defendant, as also notice to the latter from the legal plaintiff by the letter of March 4, 1929, also from the use-plaintiff by the letter of March 12, 1929. Use-plaintiff also claimed that the letter of March 4, 1929, not only was notice of the assignment, but in itself operated as an equitable assignment to use-plaintiff.

On behalf of plaintiff, J. J. Albright, assistant manager in March of 1929, of use-plaintiff company, called as a witness on behalf of the latter, testified that on March 4, 1929, he called on John R. Draper, president of Draper Paper Mills, Inc., legal plaintiff, for the purpose of collecting the account due from legal plaintiff to use-plaintiff, and threatening to shut off supply of power if not paid, and that the said Draper, on behalf of legal plaintiff, made an oral assignment to use-

plaintiff, saying: "I give you this car, or I will give the proceeds from this car which is going out within two or three days to the Pittsburgh Provision Company in the name that was—and I accepted him right away." The testimony of Mr. Albright was uncontradicted.

In submitting the case to the jury, the trial judge instructed them, inter alia, as follows: "...... If there was such a conversation as he (Albright) testified to, and you find that the conversation as he testified to intended to transfer the interest in that carload of paper to the power company, and actually did transfer that interest at that time, then you come to the second question. ...... However, you are still not entitled to find a verdict in favor of the plaintiff. If you find that there was an assignment, then, before you can find legally a verdict in favor of the plaintiff, or plaintiffs, you must also find that there was due notice given to this defendant, the Huff, Barnes & Opie Company, that an assignment had been made, because unless due and proper notice of the assignment were given the defendant, the defendant would not be bound to make payment to whomever the interest had been assigned. ...... This letter of April 4th is marked Exhibit No. 4, but then, since counsel calls my attention to it, there is another letter of March 16th, marked Exhibit "A". All of these exhibits you will be permitted to take out with you to the jury room to examine, in order to determine what the effect of the language of them is and whether or not they give you any information as to the true situation as it existed between the parties. ...... You may consider what was the duty of the defendant with respect to the letter of March 4th, in view of the language here used; but if you find that it was the letter of March 4th which constituted the notice, if there was notice of an assignment, and that that letter, in and of itself, by its own lan-

guage, was the only notice given and by its own language was not notice of an assignment of interest, then you ought to find a verdict in favor of the defendant, because under such circumstances, it would have made possible the use of the words by Mr. Wittsche in the later letter, and, in that event, the defendant was without the notice which it was entitled to have, and it would therefore be entitled to your verdict. ...... in determining this case, you have to pass upon, and almost exclusively, documentary evidence. You have some testimony, it is true, but that testimony is confined to a rather narrow field. ...... But, I will say to you, members of the jury, that as far as I can see it there is no written evidence or notice, or any other type of evidence of notice, except one or other, or both, of those two letters of March 4th and March 12th, which you could so construe. The letter of March 4th is the one which is evidently relied upon by the plaintiff as the one constituting notice. The one of March 12th, as you will observe, is one which refers to the letter of March 4th, and is a follow-up, so to speak. It might be interpreted as referring to a notice, but in and of itself could scarcely be taken as that notice. You might regard it, with the letter of March 4th, as constituting notice, if you so find; *but it is for you to say whether or not, in any event, either or both of those letters constitute notice.*" (Italics supplied.)

Appellant argues very strongly, and not without some authority to support it, that the letter of March 4, 1929, in connection with the circumstances under which it was written, and sent to appellee, Huff, Barnes, & Opie, Inc., as also copy to appellant, of itself operated as an equitable assignment. It is not necessary however, for us to pass upon this question in view of our disposition of this appeal.

Plaintiff, appellant, in its statement of claim evi-

dently relied primarily upon the alleged oral assignment to it by the legal plaintiff, as testified to by Mr. J. J. Albright, assistant manager of use-plaintiff. Irrespective of the effect of the letter of March 4, 1929, it, as also the letter of March 12, 1929, undoubtedly put defendant upon notice, and were received by the latter before payment of the invoice personally to the president of Draper Paper Mills, Inc.

The construction of the letters of March 4 and 12, was for the court, and it was error to submit the construction or interpretation thereof to the jury. "What constitutes a sufficient notice is usually a question of fact, but when it depends upon the construction of writings, it becomes a question of law"—5 Corpus Juris 937; Corcoran, for use, etc. v. The Mut. Life Ins. Co. of N. Y., 179 Pa. 132; Carbon Spring Water Ice Co. v. Hawk, 29 Pa. Superior Ct. 13; Brentwood Realty Co. v. Moses, 73 Ibid. 307. The court should have instructed the jury that if they believed and found that an oral assignment had been made, then defendant had sufficient notice, under the letter of March 4, to put it upon inquiry before the subsequent payment to the president of legal plaintiff. If it saw fit to pay without such inquiry, it was at its own risk.

The first, fifth, eighth, ninth, tenth, eleventh, twelfth and thirteenth assignments of error are sustained, the judgment of the lower court is reversed and a venire facias de novo is awarded.